# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 19-1977V
UNPUBLISHED

| | |
|---|---|
| CAROLYN KLAUSEN, administrator of the ESTATE OF TERRY KLAUSEN,<br><br>                 Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>                 Respondent. | Chief Special Master Corcoran<br><br>Filed: February 2, 2023<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Table Injury; Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*David John Carney*, Green & Schafle, LLC, Philadelphia, PA, for Petitioner.

*Austin Joel Egan*, U.S. Department of Justice, Washington, DC, for Respondent.

**RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES**[1]

On December 30, 2019, Terry Klausen filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza ("flu") vaccine he received on January 7, 2019. Petition, ECF No. 1 at 1. On December 1, 2021, Mr. Klausen died due to causes unrelated to the vaccination at issue in this case. Petitioner's Exhibit ("Ex.") 20. His wife, Carolyn Klausen, was appointed administrator of his estate and substituted as the petitioner in this case. (ECF No. 49-50).The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, and after holding a brief hearing on entitlement and damages in this matter, I find that Petitioner is entitled compensation, and I award damages in the total amount of **$60,000.00, for actual pain and suffering.**

I. **Relevant Procedural History**

Early in the development of this case, it became evident that the issue of onset would need to be resolved. On June 2, 2021, after the parties briefed the issue, I issued a Findings of Fact and Conclusions of Law finding that there was preponderant evidence that Mr. Klausen's shoulder pain began within 48 hours of vaccination. ECF No. 27 ("Onset Fact Finding"). Thereafter, Respondent filed a status report requesting that the deadline to file the Rule 4(c) Report be suspended while the parties explored settlement. ECF No. 30. After several months of settlement discussions, the parties reached an impasse. Petitioner requested the opportunity to file a motion for ruling on the record and a brief in support of damages. This request was granted, and a scheduling order was entered. ECF No. 42.

On December 14, 2021, Petitioner filed a Motion for Ruling on Record and Brief in support of Damages ("Motion"), arguing that Petitioner had established entitlement to compensation for a SIRVA injury, and requesting $95,000.00 for Mr. Klausen's pain and suffering. ECF No. 44. Petitioner specifically asserted that the evidence in the record preponderantly established that Mr. Klausen received a vaccine in his right shoulder on January 7, 2019, that his shoulder injury began within 48 hours of receiving the vaccine, and that he was therefore entitled to compensation. *Id*.

Respondent filed a Response to Petitioner's Motion on January 19, 2022 ("Response") recommending that entitlement to compensation be denied under the terms of the Vaccine Act. ECF No. 46. Respondent argued that Petitioner had not established that the onset of Mr. Klausen's pain occurred with the specified timeframe (despite my fact finding to the contrary), nor had Petitioner submit preponderant evidence that Mr. Klausen received the causal flu vaccine in his right shoulder as the petition alleged. *Id*. at 8-11. Petitioner filed his Reply on February 2, 2022. ECF No. 47.

This case was set for an expedited "Motions Day" hearing, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. The Motions Day hearing took place on January 27, 2023. Minute Entry dated January 27, 2023. After the argument, I orally ruled on Petitioner's entitlement to compensation and made a damages determination as well. This Decision memorializes those findings/determinations.

## II.  Factual Findings and Ruling on Entitlement

### A.  Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

## B. Factual Finding Regarding QAI Criteria for Table SIRVA

Respondent argues that Petitioner has failed to present evidence that Mr. Klausen received the flu vaccination at issue in this case in his right shoulder – the relevant situs for his injury - because the vaccination record contained no indication identifying the arm of administration, and therefore the claim could not succeed. Response at 8, 10-11. Respondent does, however, "acknowledge[] that [Mr. Klausen] consistently reported pain in his right arm throughout his medical records," although he did not report pain "until months after vaccination." *Id*. at 11.

With respect to the issue of situs, I find that the evidence in the record supports a

finding that Mr. Klausen's January 7, 2019 vaccination was more likely than not administered to his right shoulder. In seeking care for his right shoulder injury, Mr. Klausen consistently reported that the vaccine had been administered in his right arm. There is not a single record indicating otherwise. All the treatment he received for his shoulder injury was administered to his right shoulder. And thereafter, he consistently related his right shoulder injury to the January 7, 2019, flu vaccine. *See e.g.*, Ex. 2 at 12 (Mr. Klausen reports to Insight Orthopedics that his right shoulder "pain began in January of 2019 after a flu shot"); Ex. 3 at 3 (physical therapy intake form states the right shoulder injury occurred "Jan 2019" and the activity prior to his condition was "received flu shot."); Ex. 5 at 3 (Mr. Klausen completed 16 physical therapy sessions for his right shoulder injury). And although not dispositive, Mr. Klausen obtained a letter from his primary care provider who administered the vaccine that stated that it was common practice in his office to give the flu shot in the right deltoid. Ex. 10. at 1. Accordingly, there is record support for the contention about the situs of administration, beyond Mr. Klausen's own allegations.

Respondent also seems to dispute the onset issue, i.e., that Mr. Klausen's shoulder pain began within 48 hours of vaccination. But I have already resolved this issue in my prior ruling. *See* Findings of Fact and Conclusions of Law, issued June 2, 2021, ECF No. 27. Accordingly, that issue also cuts in Petitioner's favor.

I therefore find it more likely than not that the vaccination alleged as causal in this case was administered in Mr. Klausen's right shoulder on January 7, 2019, and that the onset of his right shoulder pain was within 48 hours of vaccination. Accordingly, these elements of the claim have been met.

### C. Other Requirements for Entitlement

As stated above, I find that Petitioner has satisfied all requirements for a Table SIRVA and is entitled to a presumption of causation. Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), i.e., receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed. I therefore find that Petitioner is entitled to compensation in this case.

### D. Damages

#### a. The Parties' Arguments

Citing five[4] prior damages determinations, Petitioner requests $95,000.00 in pain and suffering. Motion at 23. She asserts that Mr. Klausen's course of treatment (including an MRI, five steroid injections,16 sessions of physical therapy, and a home exercise program with the assistance of his daughter who is a PT assistant until December 2021), is comparable to the aforementioned non-surgical SIRVA cases and warrants an award at that level. Motion at 1-2, 13-25.

Respondent, by contrast, proposes an award of no more than $60,000.00 for pain and suffering. Response at 15-19. He argues that "the Court should consider [Mr. Klausen's] significant delay in seeking treatment for right shoulder pain." *Id*. at 16. Respondent cites to one case in particular – *Knauss v. Sec'y of Health & Human Servs.*, No. 16-1372V, 2018 WL 343296 (Fed. Cl. Spec. Mstr. Ma 23, 2018) – in which the petitioner received $60,000.00 for pain and suffering stating that this is the more analogous case. Response at 11.

#### b. Legal Standards for Damages Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Berge v. Sec'y Health & Human Servs.*, No. 19-1474V, 2021 WL 4144999, at *1-3. (Fed. Cl. Spec. Mstr. Aug. 17, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and

---

[4] Petitioner discusses the following cases in her Motion: *Danielson v. Sec'y of Health & Human Servs.*, No. 18-1878V, 2020 WL 8271642, at *3 (Fed. Cl. Dec. 29, 2020)(Chief Special Master Corcoran); *Selling v. Sec'y of Sec'y of Health & Human Servs.*, No. 16-0588v, 2021 WL 1292753 (Fed. Cl. Spec. Mstr. May 2, 2021) (Special Master Oler); *Gentile v. Sec'y of Health & Human Servs.*, No. 16-0980v, 2020 WL 3618909, at *1-2 (Fed. Cl. Spec. Mstr., June 5, 2020) (Special Master Dorsey); *Young v. Sec'y of Health & Human Servs.*, No. 15-1241V, 2019 WL 396981 (Fed. Cl. Spec. Mstr., Jan. 4, 2019) (Special Master Dorsey); *Binette v. Sec'y of Health & Human Servs.*, No. 16-0731V, 2019 WL 1552620 (Fed. Cl. Spec. Mstr., Mar. 20 2019) (Special Master Dorsey).

6

suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. [5]

### c. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Mr. Klausen was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of his injury. When performing this analysis, I review the same record relied upon to determine entitlement, including the filed affidavits and medical records, written briefs, and argument at the Motions Day hearing. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases.

Determination of pain and suffering is complicated by the fact that Mr. Klausen died during the pendency of this case (due to unrelated factors). I do consider and factor into my Decision that obtaining additional evidence from Mr. Klausen about his pain and suffering was not possible. However, I must rule on an award for pain and suffering on the record as it stands before me.

Mr. Klausen's only affidavit (dated December 30, 2019) states that prior to vaccination, he was healthy, active, and had no orthopedic shoulder injuries. Ex. 1 at 1. He stated that in the days after receiving the vaccine, he attempted to play the game Wii with his great grandchildren and noticed that he felt sharp pain in his shoulder while playing the bowling game. *Id*. at 3. But over the next couple of months, he had "very little to no use of my right arm and shoulder." *Id*. He described that he could not pick up his grandchildren for fear of dropping them. *Id*. He finally saw a physician in April of 2019, approximately three months after vaccination, because his right shoulder "was not resolving like I thought it would." *Id*.

Mr. Klausen attended several weeks of physical therapy to treat his "severe shoulder pain" and also received a cortisone injection since the shoulder pain was restricting his activities. Ex. 1 at 2. He stated that neither the physical therapy nor the cortisone injection relieved his pain. *Id*. Mr. Klausen described that he had difficulty reaching, raising his arm, carrying objects, and donning shirts. *Id*. He described that the pain often interrupted his sleep. *Id*.

---

[5] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I note that Mr. Klausen underwent an MRI of his right shoulder on August 13, 2019, which showed degeneration of the right shoulder (which may indicate chronic rotator cuff disease that likely predated the relevant vaccination). Ex. 2 at 14. He then reported to physical therapy on October 10, 2019, and attended a total of 16 physical therapy sessions to treat his right shoulder. Ex. 2 at 7; Ex. 4 at 2; Ex. 16 at 4-9; 19-20. Mr. Klausen received a total of five cortisone injections to his right shoulder to treat his pain. His medical records note that after physical therapy, Mr. Klausen had only regained 10% of normal function in his right shoulder, resulting in an overall 40% loss of function as of October 2020. Ex. 15 at 4.

However, Mr. Klausen's delay of three months in seeking treatment is not insignificant. Mr. Klausen stated in his affidavit that he had "very little to no use of my right arm and shoulder." Ex. 1 at 3. If his right shoulder pain were as severe as he described, it is difficult to understand why he waited nearly three months to be seen. The medical records also indicate that the worst he rated his pain was 4/10. Ex. 15 at 4-5.

The parties' comparable case citations were reasonable, but not fully useful in helping me to calculate pain and suffering. In particular, Petitioner's comparable cases featured pain and suffering awards well in excess of what is appropriate in a non-surgery SIRVA case like the present. And the parties also only cited to one SIRVA case that I decided in the context of SPU. While I certainly consider cases decided by other special masters for guidance, cases where I have already ruled in similar circumstances are particularly helpful, since it has been my goal in SPU (and in promulgating "Motions Day" as well) to fashion consistent results that might guide the parties in future damages disputes.

I find that Petitioner's SIRVA more closely resembles the injury suffered by the petitioner in *Knauss*. As here, the *Knauss* claimant did not undergo surgery. Both petitioners were in their 70s and delayed seeking treatment for their shoulder injuries for several months after vaccination. *Knauss*, 2018 WL 332906, at *2-4. Both petitioners underwent physical therapy and received steroid injections. And while Mr. Klausen may have endured a longer period of time of active pain, that evidence is not in the record and could not be further explored due to his death. Unfortunately, I must rule on the evidence before me.

Under such circumstances, and considering the arguments presented by both parties, a review of the cited cases, and based on the record as a whole, I find that $60,000.00 in compensation for Mr. Klausen's pain and suffering, akin to *Knauss*, is reasonable and appropriate in a non-surgery SIRVA case like the present. (I also note that Petitioner took considerable risk in litigating this claim, despite my comments in the Onset Fact Finding about delay in treatment impacting severity. (*See* Onset Fact Finding

at 7). I well could have awarded even *less* in damages than Respondent proposed. Although I am not privy to the parties' settlement discussions and their tenor, the failure to settle the case after my fact determination exposed Petitioner to the possibility of a diminished recovery. I will hope in the future that counsel take seriously my comments about severity in my fact determinations).

### E.  Conclusion

In light of all of the above, the I award **a lump sum payment of <u>$60,000.00</u>, (for actual pain and suffering) in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[6]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.